UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD CLOUD | : | |
| | : | |
| PLAINTIFF, | : | |
| | : | |
| VS. | : | NO. |
| | : | |
| CITY OF NEW HAVEN | : | |
| | : | |
| DEFENDANT. | : | SEPTEMBER 14, 2015 |

**C O M P L A I N T**

**COUNT ONE**

1.  This is an action for money damages to redress the deprivation by the defendant of rights secured to the plaintiff by the laws of the United States and the State of Connecticut.  The defendant subjected the plaintiff to, inter alia, violation of the rights secured to the plaintiff by the provisions of the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A.§ 2000e;  the Connecticut Fair Employment Practices Act, Sections 46a-58(a) et seq. of the Connecticut General Statutes; and to the intentional infliction of emotional distress, in contravention of the laws of the United States and the laws of the State of Connecticut.

2.  Jurisdiction of this Court is invoked under the provisions of Sections 1331, 1337, 1343, 1343(3) and/or 1367(a) of Title 28 of the United States Code, and the court's supplemental jurisdiction over state law claims.

3.  At all times relevant to the instant complaint, the plaintiff, Edward Cloud, was and is an adult citizen of the United States residing in New Haven, Connecticut.  The plaintiff is male, and is African-American.

4.  At all times relevant to the instant complaint, the defendant City of New Haven was and is an employer with more than 100 employees.

5.  For an extended period of time continuing to the present, the plaintiff has been subjected to an ongoing pattern of harassment, discrimination, retaliation and disparate treatment based upon race, gender or complaints about discrimination.

6.  The conduct the plaintiff was subjected to was continuous, persistent, pervasive and constitutes a continuing course of conduct, as that term is defined in the law.

7.  At all times relevant to the instant Complaint, the plaintiff was and is employed by the defendant City of New Haven as a Laborer in its Department of Public Works.  This department of the defendant is located at 24 Middletown Avenue, New Haven, CT 06513.

8.  The plaintiff has been employed by the defendant for over 15 years. Throughout that time, his work has been excellent.

9.  On or about March 24, 2014, the plaintiff was contacted by a supervisor, Robert Robinson, who informed him that Honda Smith and Richard Christensen were trying to reach him.  Robinson, Smith and Christensen are employees of the defendant,

and as such are agents thereof.  Honda Smith is a female, and has supervisory

responsibilities with the defendant.

10.  Shortly after, the plaintiff contacted the main office ("Central") on the radio.

Honda Smith instructed him to meet her at Central.  Smith then instructed the plaintiff to

meet her in the empty office of another supervisor, Lynwood Smith.

11.  Once the plaintiff was in the office with Smith, she closed the door behind

him.  Smith then took out her City issued phone, and showed him a picture of a man

holding his genitalia.

12.  The plaintiff was shocked and embarrassed.  Smith then claimed that it was

the plaintiff in the picture, and that the plaintiff had sent the picture to her.  It was not

him, and the plaintiff had not sent the picture to her.  The plaintiff was mortified.

13.  The plaintiff told Smith that he would never send a picture of that nature to

anyone.  The plaintiff again stated that the male in the picture was not him.

14.  The plaintiff showed Smith his hands, and pointed out that his fingernails are

white, and that the nails of the man in the photograph were not, and were visibly

different from the plaintiff's.

15.  Smith then acknowledged that the person in the photograph was not the

plaintiff.  Nevertheless, Smith still persisted in falsely claiming that the plaintiff sent the

photograph to her.

16.   In the plaintiff's presence, Smith called the number from which the picture was sent.

17.   The plaintiff could hear a man's voice answer the telephone.  From the conversation and Smith's tone, it was apparent that she knew the man who had sent her a picture of his penis.

18.   When Smith hung up the telephone, she said that she had to apologize to the guys in the lunchroom, because it was not him in the picture.

19.   The plaintiff was horrified and sickened.  The plaintiff learned that Smith had shown the picture to many other employees of the defendant, claiming that it was him in the picture, and that the plaintiff had sent her a picture of his penis.  She had done this before confronting the plaintiff and without even checking to see if it was a friend of hers who had sent her the picture, which, in fact, was the case.

20.   When the plaintiff returned to the lunchroom, he was teased and taunted by the several of his coworkers.  The lunchroom was filled with his colleagues, including one or more supervisors.  The plaintiff was taunted and humiliated for something he did not do.  As Smith falsely claimed that the plaintiff had sent the picture, and that it was of himself, the plaintiff's coworkers teased and tormented him, calling him "Little Winky" and other such hurtful and inappropriate names.  One employee said that the plaintiff had a "little wee wee".  This caused the plaintiff severe embarrassment and humiliation.

21.   The plaintiff was now perceived by his fellow employees as one who would send unsolicited  pictures of his penis to a fellow, female employee.

22.   Smith not only told the plaintiff's fellow employees that the plaintiff had sent her a picture of a man holding his genitals, she also showed them the picture.

23.   Although the plaintiff tried to put on a brave front, he was devastated by the accusations, the taunts and the name calling.  By the time the plaintiff arrived home, he was physically ill.  Just as a bell once rung cannot be unrung, the impression that the plaintiff would engage in such conduct persists at the plaintiff's workplace, despite the falsity of Smith's claims.

24.   No matter how many times the plaintiff tells his fellow employees that it was not him who sent or who was in the picture, there is always someone who insists that it was him.

25.   On March 25, 2014, the plaintiff submitted a signed, written complaint about this incident to the Human Resources Department of the defendant.  The plaintiff detailed the incident in great detail, and specifically requested that the defendant address the situation, including preventing Smith from having any further contact with him.

26.   In his written complaint to the HR Department of the defendant, the plaintiff informed the defendant that he had commenced an official complaint with the

Connecticut Commission on Human Rights and Opportunities, and that the plaintiff had commenced a private legal investigation.

27.   The plaintiff further informed the defendant that he had attempted to resolve this matter by reporting it to the Director of the Department of Public Works, to his Union, and to the defendant's Employee Assistance Program.

28.   The plaintiff's complaints to the defendant went unheeded.

29.   After his complaints, and in retaliation therefor, the defendant moved the plaintiff from the Street Division of the defendant's Department to the Transfer Station. This is a significantly less desirable assignment.

30.   The defendant did not move Honda Smith, although it was she who harassed the plaintiff.  Instead, the defendant rewarded Smith by increasing her duties and status to  those of a supervisor.

31.   The plaintiff requested that the defendant transfer to him to a position other than the Transfer Station, to a position in Refuse.  The defendant refused, which resulted in a loss of income and wages to the plaintiff.  The defendant transferred him to Transfer and refused him Refuse.

32.   On June 2, 2014, the plaintiff was again forced to have contact with Honda Smith.  After returning from exile in the Transfer Station position, the plaintiff learned that Smith was still in her position and had not been moved.  The defendant once again

compelled the plaintiff to have contact with Smith, and work in the same vicinity.  The plaintiff felt unsafe working near Smith.

33.  On the day of his return, the Director of the DPW was present at Roll Call. The plaintiff thought that there would finally be some relief provided to him and action taken on his complaints by the defendant.  This was not to happen, however.

34.  When assignments were handed out by Lynwood Dorsey, a supervisor, the plaintiff was the last to receive one.  The plaintiff was again forced to take a work assignment which put him into contact with Smith.

35.  The plaintiff saw that the defendant still had no intentions of doing anything to assist or to protect him from further harassment.

36.  The plaintiff complained to a supervisor that he did not wish to be in contact with Smith.  Although the plaintiff did so calmly, the supervisor angrily ordered that the plaintiff report to his office with Union representation.  This is what occurs when a supervisor intends upon disciplining an employee.

37.  In the supervisor's office, another supervisor was present.  The plaintiff explained to both that he was made uncomfortable by and did not feel safe around Smith, and that the plaintiff did not want to be forced to work around her.  Both men admitted that if the plaintiff had done to Smith what she had done to him, then the plaintiff would have been fired immediately.  Both supervisors are white.

38.  At this meeting, the supervisors demanded to know if the plaintiff was going to work.  The plaintiff told them in no uncertain terms that he was fully ready to work. The plaintiff was asking only to be protected from Smith, and to not be forced to work with her.

39.  That afternoon, at the end of the day, the plaintiff was summoned to the office of the Director, as a result of the morning meeting.

40.  As a result of this meeting, the Director placed the plaintiff on probation.  The plaintiff's colleagues are afraid to work with him, as they fear that they too will be targeted and subjected to harassment and retaliation by the defendant.

41.  The harassment by Smith, and the harassment and retaliation by the defendant is ongoing to the present.

42.  On September 11, 2014, the plaintiff was again forced to work in the vicinity of Honda Smith.  At approximately 7:20 a.m., after Roll Call, the plaintiff observed Smith harassing two fellow employees, Willie and Pedro.  Smith was very ugly with the two, particularly Pedro.  Smith was using racial slurs against Pedro.

43.  Superintendent Lynwood Dorsey was present and watched Smith as she abused  and harangued the two men.  Dorsey did nothing to stop Smith, or to protect the other employees.  The longer this went on, the more heated Smith became, and the more upset and offended the plaintiff became.

44.  Having been victimized by Smith, and having the defendant do nothing, the

plaintiff did not wish to see his colleagues be subjected to the same conduct.  From

across the room, the plaintiff took out his cell phone and attempted to record Smith's

abuse.

45.  Smith then turned on him, and threatened him.  She said that she would

have him arrested.  The plaintiff calmly mentioned the case that the plaintiff had pending

against her, where she accused him of sending her a picture of his private parts, which

she showed to employees around the workplace.

46.  Smith then made a false complaint to the police.  The plaintiff began to feel

ill, and was transported to the hospital.

47.  As a result of the false claim, the plaintiff received a summons alleging

Breach of Peace in the Second Degree.  The police never spoke to him about the

incident, but did speak to  Smith.

48.  On September 12, 2014, the plaintiff provided a detailed, written and signed

complaint to the HR Department of the defendant.  The plaintiff specifically stated that

this conduct by Smith and the defendant was in retaliation for his previous complaints

about sexual harassment and  the defendant's failure to respond thereto.

49.  For an extended period of time continuing to the date of the instant

Complaint, the plaintiff has been subjected to an ongoing pattern of harassment, sexual

harassment, discrimination and disparate treatment based upon his gender, race, ethnicity and in retaliation for complaints about such treatment.

50.  The conduct of the defendant and its agents, officers or employees has been continuous, persistent and unabated.  The actions of the defendant therefore constitute a continuing course of conduct.

51.  As detailed herein and continuing to the date of his termination, the defendant subjected the plaintiff to an ongoing pattern of harassment, sexual harassment, discrimination and disparate treatment based upon his gender, race, ethnicity and in retaliation for his complaints about such treatment.  The conduct was continuous, persistent and ongoing.

52.   The plaintiff has exhausted his administrative remedies in this matter, and has sought and received a Notice of Right To Sue letter from the United States Equal Employment Opportunity Commission, and a Release of Jurisdiction from the Connecticut Commission on Human Rights and Opportunities.

53.  As a consequence of the actions of the defendant, the plaintiff has suffered loss of employment, loss of pay, loss of benefits, severe emotional distress and harm, anxiety, upset, fear, humiliation, indignity, stress, deprivation of rights, harm to his professional and personal reputation and severe financial harm.

54.  In the manner described above, the actions of the defendant constitute violation of the rights secured to the plaintiff by the provisions of the Title VII of the Civil

Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A.§ 2000e.

**COUNT TWO**

1.-52.  Paragraphs 1 -52 of Count One are hereby made Paragraphs 1-52 of Count Two.

53.  In the manner described above, the defendant has subjected the plaintiff to, inter alia, age discrimination, gender discrimination, retaliation and hostile work environment.

54.  In the manner described above, the actions of the defendant constitute violations of the provisions of the Connecticut Fair Employment Practices Act, Sections 46a-58(a) et seq. of the Connecticut General Statutes, in contravention of the Constitution and laws of the State of Connecticut.

55.  As a consequence of the actions of the defendant, the plaintiff has suffered loss of employment, loss of pay, loss of benefits, severe emotional distress and harm, anxiety, upset, fear, humiliation, indignity, stress, deprivation of rights, harm to his professional and personal reputation and severe financial harm.

**COUNT THREE:**

1.-52.  Paragraphs 1 -52 of Count One are hereby made Paragraphs 1-52 of Count Three.

53.  The actions of the defendant were extreme and outrageous.

54.  The actions of the defendant were intentional.

55. The actions of the defendant were likely to cause severe emotional distress.

56. The actions of the defendant caused the plaintiff to suffer extreme emotional distress.

57. As a consequence of the actions of the defendant, the plaintiff has suffered loss of employment, loss of pay, loss of benefits, severe emotional distress and harm, anxiety, upset, fear, humiliation, indignity, stress, deprivation of rights, harm to his professional and personal reputation and severe financial harm.

WHEREFORE, the plaintiffs claim judgment against the defendant as follows:

A. Compensatory damages;

B. Punitive damages;

C. Attorney fees and the costs of this action pursuant to all applicable provisions of state and federal law;

D. Equitable relief pursuant to 29 U.S.C.A.§§ 626(b) and (c), 633a(b) and (c) and all other applicable provisions of state and federal law;

E. Such other relief as this Court shall consider to be fair and equitable.


## CLAIM FOR JURY TRIAL

The plaintiff claims trial by jury of all issues in this case.

THE PLAINTIFF


BY_____/s/_____
WILLIAM S. PALMIERI
      Law Offices of William S. Palmieri, L.L.C.
      Federal Bar No. ct14361
      129 Church Street,  Suite 405
      New Haven, CT 06510
      PHONE: (203) 562-3100
      FAX:  (203) 909-6006
      EMAIL:  wpalmieri@hotmail.com
      His Attorney